**FELDMAN et al. v. HESCH, City Manager, et al.**

Court of Appeals of Kentucky.

Feb. 6, 1953.

Benton, Benton & Luedeke, Newport, for appellants.

Morris Weintraub and Charles J. Schear, Newport, for appellees.

CULLEN, Commissioner.

The appellant Herman T. Feldman, owner of a garage building in the City of Newport, and the appellants Floyd M. Freppon and Jack Gemmer, lessees of the building, brought an action against various officers of the city, seeking to enjoin the officers from interfering with the appellants' continued use and occupancy of the building. The appeal is from a judgment denying an injunction.

The question is whether the use to which the building is being put by the lessees Freppon and Gemmer constitutes a change, conversion or enlargement of the use to which the building formerly was put by the owner Feldman, so as to require that the lessees obtain a certificate of occupancy under the city zoning ordinance.

When the city zoning ordinance was adopted, the neighborhood in which the garage was located was zoned as a residential district. However, the ordinance contained the customary provision allowing the continuance of nonconforming uses. At that time Feldman was engaged in the dairy business, and he used the garage building for storing and servicing some seven or eight delivery trucks used in his dairy business.

Some two years after the zoning ordinance was adopted, Feldman leased the building to Freppon and Gemmer, who are engaged in the used car business. They are using the building as a place in which to wash, paint, repair and otherwise recondition the automobiles which they have purchased for resale. The actual buying and selling of cars is conducted at a lot in another part of the city.

The zoning ordinance contains this provision:

"It shall be unlawful for an owner to use or permit the use of any building or premises or part thereof, hereafter created, erected, changed, converted or enlarged, wholly or partly, in its use or structure until a Certificate of Occupancy shall have been issued by the City Engineer, or his duly authorized representative."

The lessees did not obtain or apply for a certificate of occupancy, and the city officials commenced to demand, by letters and by personal visits, that the lessees discontinue their use of the building and cease doing what the officials claimed was a violation of the ordinance. The action for an injunction then was instituted.

It is obvious that if the use by Freppon and Gemmer is not a changed use, they are not required to obtain a certificate of occupancy. It also is obvious that if the use is a changed one, they cannot secure such a certificate, because the nonconforming-use exemption, under which Feldman was per-

mitted to continue the use of his garage in a residential zone, will not extend to a changed use. The question we must decide, then, is simply whether the use is a changed use within the meaning of the zoning ordinance.

The evidence indicates that Feldman used the garage primarily for storage purposes, although he did some routine repair work on his trucks, washed them, and occasionally painted them. The work was done by his truck drivers, in a regular maintenance program. On the other hand, the principal use of the garage by Freppon and Gemmer is for reconditioning used automobiles for sale. Different automobiles are brought to the garage each day. The reconditioning work includes such things as cleaning, washing, painting, making mechanical repairs, and occasionally some body work. We think it is clear that the reconditioning work is the main thing carried on in the garage, whereas during Feldman's occupancy any reconditioning work on his trucks was incidental.

The simple fact is that Feldman used the garage as a remote adjunct to a milk business, while Freppon and Gemmer are using it as an integral part of a used car business.

It is beyond question that the ultimate object of the zoning ordinance is to limit the district, in which this garage is located, to strictly residential uses. The ordinance reluctantly permits the continuance of nonconforming uses, hoping that such uses may be eliminated as soon as possible. As far as the intent of the city legislative body is concerned, it is reasonably certain that the intent was to hold nonconforming uses within strict limits, and not to permit any increases in the nonconformity. See 58 Am. Jur., Zoning, sec. 155, p. 1025.

There are no Kentucky decisions establishing a precedent to guide us in this case. However, a number of cases from other jurisdictions, involving somewhat similar factual situations, are annotated in 147 A.L.R. at pages 167 to 183. Among these cases are Lexington v. Bean, 272 Mass. 547, 172 N.E. 867, Keenly v. McCarty, 137 Misc. 524, 244 N.Y.S. 63, and People v. Giorgi, Co.Ct., 16 N.Y.S.2d 923.

In the Bean case, supra, a person engaged in the trucking and express business used a garage building as a place in which to repair his trucks, and occasionally he permitted other persons to store and repair automobiles. Later, the use of the building was changed to that of a public garage for the repairing of motor vehicles for hire. It was held that the latter use was not permissible, being a substantial change of the original nonconforming use.

In the McCarty case, supra, it was held that a boarding house or rest home for elderly people could not be converted into a hospital for alcoholics and drug addicts.

In the Giorgi case, supra, it was held that premises used by a building contractor for the purpose of manufacturing concrete blocks for use in his business could not be used by another person for the purpose of manufacturing concrete blocks for general sale to the public.

It is true that in the Bean case and the Giorgi case the use was changed from a private use to a public use, but we do not consider that to be the controlling factor. The important consideration in each of those cases, as in the one now before us, is that the kinds of activities principally carried on under the second use were only incidental to some other major activity under the former use.

We think that the burden upon the residential district in which Feldman's garage is located, arising from storage of his trucks and incidental repair and maintenance work upon them, was substantially increased when the use of the building was so changed that automobile repair and reconditioning work is carried on constantly.

The appellants maintain that the city officials are estopped from asserting that a change has been made in the original nonconforming use, because the officials did not issue to Feldman a certificate, as required by the ordinance, defining the nonconforming use he was permitted to make of the property. The ordinance required that such a certificate be issued within six months after the adoption of the ordinance. We think that the certificate would have

importance only as evidence, and, there being no real question as to the character of the use that Feldman was making of the property at the time the ordinance was adopted, the failure to issue the certificate did not prejudice the appellants in any way.

The judgment is affirmed.