**CITY OF MIDDLESBORO et al., Appellants,**

**v.**

**Howard BILLINGSLEY et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 27, 1963.

Glenn W. Denham, Middlesboro, for appellants.

Robert J. Watson, Middlesboro, for appellees.

STEWART, Judge.

This action was brought by the City of Middlesboro and the members of the City Planning Commission to enjoin the use of business property allegedly in violation of a zoning ordinance, which property is owned by Howard and Josephine Billingsley. The chancellor found against the city and dismissed the complaint. This appeal followed.

In November, 1953, the City of Middlesboro adopted a comprehensive zoning ordinance. As a result, property located on the south side of Winchester Avenue between 21st and 22nd Streets was zoned for residential purposes. Located in that block when the zoning ordinance became effective were various residences and also a concrete-block business building owned by Howard and Josephine Billingsley, appellees herein. The relevant portion of the zoning ordinance reads:

"33.3 No nonconforming use may be reestablished after it has been discontinued for one year. Vacating of premises or building or non-operative status shall be evidence of a discontinued use.

"33.4 No nonconforming use may be changed to any other nonconforming use unless the Board of Zoning Adjustment shall find that the proposed nonconforming use is less detrimental to the district than the existing nonconforming use of the property. The Board of Zoning Adjustment may specify such appropriate conditions and safeguards as may be required in connection with such change."

It appears from the evidence introduced that the Billingsley structure was built sometime in the late 1940's; that it was utilized at first for the storage of construction equipment and supplies; and that a portion of it was rented to Tri-State Bus Company during the latter part of 1952, this company keeping three or four buses in the front of it but the lessors retaining possession of the back of it for the purpose above mentioned. In 1955 Tri-State Bus Company moved out and until 1960 the building was used as storage for various items, including construction equipment and materials, a gasoline truck and a passenger automobile.

In 1960 the building was leased to Middlesboro-LaFollette Bus Line, an appellee herein. When the latter took over the structure, it concreted the floor and put in a grease pit in order to service its buses on the inside. Mechanical equipment, such as air compressors, jacks and other devices necessary for such work, was installed, and the premises have since been employed as a garage where all of the major repairs are performed on the six buses owned by appellee bus line. Occasionally work has been done on the cars of the above appellee's bus drivers. The noise of this activity is great

and the volume is such that some buses are parked on the street while others are being reconditioned. A full-time mechanic is employed at the place and he puts in time each day from 8:00 or 8:30 a. m. to 4:00 or 5:00 p. m. The building is also utilized to store the buses.

The City of Middlesboro and the members of the City Planning Commission, appellants herein, brought this action against the Billingsleys, appellees herein, to enjoin the business conducted in the building, claiming a violation of the city's zoning ordinances because of a material change in the nonconforming use of the property. The trial court, by its findings of fact and conclusions of law, found that the nonconforming use of the building had been substantially the same from the time of its erection down to the present, and that such use had never been abandoned.

A reading of section 33.4 of the ordinance dealing with the subject matter before us clearly indicates that its intent is to hold nonconforming uses within strict limits; and that any change effected must be to another "nonconforming use that is less detrimental." In Attorney General v. Johnson, Ky., 355 S.W.2d 305, this statement was made: " * * * We have pointed out that an important consideration in a case of this character, where a shift in use is contemplated, is to be certain that the type of activity carried on under the second use is merely incidental to the major activity allowed by the former nonconforming use. * * * "

In the case of Feldman v. Hesch, Ky., 254 S.W.2d 914, a garage building owned by Feldman which had been used by a dairy business for storing and servicing delivery trucks, and for making repairs on them, was employed by a later lessee to carry on the business of reconditioning automobiles in order to place them on the market for sale. This Court pointed out that the reconditioning operation was the main business carried on under the second use, whereas storage was the primary utilization of the garage by the dairy business, the first user, and any repair work done on the latter's truck was incidental to the storage use.

The opinion in that case, in deciding a new use had been initiated which violated the zoning regulation, stated: "We think that the *burden upon the residential district* in which Feldman's garage is located, arising from a storage of his trucks and incidental repair and maintenance work upon them, *was substantially increased* when the use of the building was so changed that automobile repair and reconditioning work is carried on constantly." (Emphasis added.)

In City of Bowling Green v. Miller, Ky., 335 S.W.2d 893, 87 A.L.R.2d 1, a building which had been used to display and store furnaces and parts was converted over to a sheet-metal business. This Court was of the opinion that the sheet-metal business "constitutes a shift from the passive use of the building for storage and sales purposes to a manufacturing enterprise," and rejected the contention that such was a continuance of the established nonconforming use.

The above two cases are controlling here. In Feldman v. Hesch it was held the conversion of a garage from a place of storage to one of making mechanical repairs on second-hand cars was a change in a nonconforming use contrary to the terms and conditions of a municipal zoning restriction. We have this identical pattern in the case before us because repairing activity is now principally carried on by appellee, whereas storage was the major business under the former use of the building. There has been, as was pointed out in City of Bowling Green v. Miller, a deviation from a passive use, namely general storage, to an active use, namely reconditioning buses and cars.

We conclude the determination made by the chancellor is not supported by any evidence of substance. See CR 52.01.

█ It is argued the complaint does not state a claim upon which relief may be granted. The complaint in our view alleges

facts which tend to show a violation by appellees of the terms of the zoning ordinance under consideration and asks that they be enjoined from making any use of their property other than for the purpose permitted by the restrictive provisions of that ordinance. We are of the opinion the requirements of CR 8.01 were met. This rule prescribes the essential elements a claim for relief must set forth.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.